IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY FREEZE,                          )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )        1:21CV275
                                          )
KILOLO KIJAKAZI,                          )
Acting Commissioner of Social Security,[1] )
                                          )
                        Defendant.        )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kimberly Freeze ("Plaintiff") brought this action pursuant to Sections 205(g)

and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying her claims for Disability Insurance Benefits and Supplemental Security Income under,

respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment,

and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on February 20, 2019 and February 5, 2019,

respectively, alleging a disability onset date of July 25, 2018 in both applications. (Tr. at 17,

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul
as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this
suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

301-09.)[2]  Her applications were denied initially (Tr. at 94-125, 206-10) and upon reconsideration (Tr. at 126-205, 217-30).  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 235-36.)  Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent telephonic hearing on April 27, 2020.  (Tr. at 17.)  The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27), and, on February 4, 2021, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.  (Tr. at 1-6.)

II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify

as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior

work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

a significant number of jobs exist which the claimant could perform, despite the claimant's

impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide

"whether the claimant is able to perform other work considering both [the claimant's RFC]

and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust

to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its

"evidentiary burden of proving that [the claimant] remains able to work other jobs available

in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her

burden at step one of the sequential evaluation process. (Tr. at 19-20.)[5] At step two, the ALJ

further determined that Plaintiff suffered from the following severe impairments:

> history of migraine headaches; degenerative disc disease; osteoarthritis; and
> obesity[.]

(Tr. at 20-22.) The ALJ found at step three that none of these impairments, individually or in

combination, met or equaled a disability listing. (Tr. at 22.) Therefore, the ALJ assessed

---

[the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)."
Hines, 453 F.3d at 562-63.

[5] Despite this finding, the ALJ noted at step one that Plaintiff's intermittent work as a Registered Nurse and
English teacher in 2018 and 2019 "appear[ed] to rise to the level of substantial gainful activity." (Tr. at 20.)
Nevertheless, the ALJ "continue[d] with the remaining steps of the sequential evaluation for the periods after
[Plaintiff] earned SGA." (Tr. at 20.)

Case 1:21-cv-00275-TDS-JEP   Document 15   Filed 09/01/22   Page 5 of 20

Plaintiff's RFC and determined that she could perform medium work with further limitations. Specifically, the ALJ found that Plaintiff

> can perform frequent, but not constant overhead reaching; and can tolerate frequent, but not constant, exposure to extreme cold, pulmonary irritants, such as dust, fumes, odors, and gases, and work place hazards, such as unprotected heights and dangerous machinery.

(Tr. at 22.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff remained capable of performing her past relevant work as a Registered Nurse and as a Hospice Nurse. (Tr. at 25.) In addition, the ALJ made an alternative finding at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now challenges the ALJ's decision in two respects. First, she argues that the ALJ failed to "provide a logical bridge between the evidence and her conclusions" regarding the impact of Plaintiff's migraine headaches on her RFC. (Pl.'s Br. [Doc. #12] at 5.) Second, she contends that the ALJ failed to properly consider the effects of Plaintiff's depression and anxiety. In particular, she argues that the ALJ erred in (1) finding these impairments non-severe at step two of the sequential analysis and (2) failing to account for limitations from mental impairments when formulating the RFC assessment. (Pl.'s Br. at 16.) After conducting a thorough review of the record, the Court concludes that the ALJ provided sufficient explanation for her determinations, and that substantial evidence supports the ALJ's conclusions.

6

A. Migraine headaches

Plaintiff first argues that the ALJ failed to conduct a proper function-by-function analysis of Plaintiff's migraine symptoms and their effect on her RFC. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

Here, Plaintiff argues that the ALJ's failure to properly explain how the RFC assessment adequately addresses limitations relating to her migraine headaches renders her decision unsupported by substantial evidence. In her decision, the ALJ discusses at length the evidence in the record, including the evidence regarding Plaintiff's migraines, and concludes that, "[i]n limiting the [Plaintiff] to medium work, with additional environmental limitations, the [ALJ] has adequately accounted for the Plaintiff's history of migraine headaches." (Tr. at 24.) Those environmental limitations include limited exposure to extreme cold, pulmonary irritants, and workplace hazards. In reaching this conclusion, the ALJ relied on various factors including the record's failure to substantiate Plaintiff's subjective complaints regarding the impact of her migraines on her RFC.

With respect to the ALJ's evaluation of Plaintiff's allegations regarding her symptoms, under the applicable regulations the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and

8

XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is not required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Arakas, 983 F.3d at 95–96. Thus, the second part of the test requires the ALJ to consider all available evidence in order to evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affects [her] ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

    (i)    [Plaintiff's] daily activities;

(ii)   The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v)    Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi)   Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained the reasons for deviating from Plaintiff's statements regarding the impact of her headache symptoms on her ability to work. The ALJ reviewed the medical evidence, Plaintiff's testimony, and other record evidence, such as Plaintiff's activities, in considering Plaintiff's subjective complaints. She then concluded that the extent to which Plaintiff's migraine symptoms limited her ability to work was not as extensive as Plaintiff alleged. In particular, the ALJ found as follows:

[Plaintiff] has . . . been diagnosed with a history of migraine headaches. [She] has reported migraines since she was 18-years old. [Plaintiff] alleged daily migraines for a month after a motor vehicle accident in July 2018. She noted that they tapered off after the first 30 days. She has also reported doing extensive research into her conditions. She did not receive physical therapy or vestibular therapy after her accident. A head CT and brain MRI were normal. . . .

On examination, [Plaintiff] generally presents with the following mostly normal findings: intact cranial nerves, intact processing speed, attention within normal ranges, intact sensation, alert, answer[s] questions appropriately, and oriented . . . . [She] has received mostly conservative treatment, including prescribed Botox, melatonin, Zonisamide, bulabital, cambia, and hydrocodone. [Plaintiff] has been noted as practicing yoga. [She] has also been noted as caring for her mother. [Plaintiff] has reported improvement in her headaches with Botox injections, including a greater than 50% reduction in her headaches. In March 2019, [Plaintiff] reported that her headaches were becoming less frequent.

10

Neuropsychological testing suggested possible symptom exaggeration. Additionally, [Plaintiff] has failed to report at additional neurological appointments. Ryan Conrad, M.D., noted in September 2019, that he did not "really understand why she is seeing me. She has filed for disability twice and has been turned down, seems to want to be on disability from what I can gather and it seems she has been seeing doctors for this." In limiting [Plaintiff] to medium work, with additional environmental limitations, the undersigned has adequately accounted for [Plaintiff's] history of migraine headaches.

(Tr. at 23-24) (citing Tr. at 437, 730, 731, 2451). More generally, the ALJ noted that "[t]here are many inconsistencies throughout the record. For example, [Plaintiff's] neuropsychological exam . . . suggested that she was exaggerating her symptoms and that her self-reported mood disorder should be interpreted with caution. [Treatment records] further noted that [Plaintiff] 'wanted to be on disability.'" (Tr. at 23) (citing Tr. at 731, 2451). Overall, the ALJ concluded that Plaintiff's impairments were "less limiting than alleged." (Tr. at 23.)

Thus, the ALJ here gave multiple reasons for finding Plaintiff's migraines less limiting that Plaintiff alleged. First, the ALJ noted significant credibility issues regarding Plaintiff's claims, based on the inconsistencies in the record and the assessment of both Dr. Harris and Dr. Conrad. On this point, the ALJ noted that Dr. Harris's "[n]europsychological testing suggested possible symptom exaggeration." (Tr. at 24, 729-34.) Specifically, Dr. Harris included a symptom validity test as part of the neuropsychological testing, and Plaintiff's "performance across a stand-alone symptom validity measure was well below expectation and suggestive of possible symptoms exaggeration." (Tr. at 731.) In addition, the ALJ also noted that "Ryan Conrad, M.D. noted in September 2019, that he did not 'really understand why she is seeing me. She has filed for disability twice and has been turned down, seems to want to be on disability from what I can gather and it seems she has been seeing doctors for this.'" (Tr. at 24, 2451). The ALJ expressly relied on these assessments in evaluating the credibility of

Plaintiff's claims of debilitating symptoms from migraines, and in concluding that Plaintiff's "impairments are less limiting than alleged." (Tr. at 23-24.)

Second, the ALJ noted that the evidence in the medical records did not support Plaintiff's claims of disabling symptoms. The ALJ noted that "[a] head CT and a brain MRI were normal" and the examinations generally reflect "mostly normal findings: intact cranial nerves, intact processing speed, attention within normal ranges, intact sensation, alert, answer questions appropriately, and oriented." (Tr. at 24, 438, 446, 515, 609, 651, 731-32, 736, 748, 2463.) Third, the ALJ noted that Plaintiff received mostly conservative treatment, which is not consistent with the degree of debilitating symptoms Plaintiff alleged. (Tr. at 24, 494, 748.) Fourth, the ALJ further noted that Plaintiff failed to take advantage of other available and recommended treatment, including by failing to report for additional neurological appointments and failing to seek out physical therapy or vestibular treatment that was recommended by Dr. Harris. (Tr. at 23-24, 732.) Fifth, the ALJ noted that the medical records reflected a significant improvement in her migraines with medication, with a substantial reduction in frequency. (Tr. at 24, 702-04, 734, 741, 743.)

Sixth, the ALJ noted Plaintiff's activities despite her claim of disabling migraines, including practicing yoga, driving long distances, using the internet including for doing extensive research into her conditions, various crafts, and caring for her family. Medical records reflect that Plaintiff told providers she took care of her elderly mother, disabled sister, and schizophrenic son. (Tr. at 23-24, 516.) In addition, the ALJ noted that Plaintiff worked as a nurse from November 2018 to January 2019 at Cabarrus Gastroenterology, during the period of claimed disability, but left to file for unemployment, and she continued to take

12

Continuing Education to renew her RN license in 2019. (Tr. at 20, 23-24.) Plaintiff contends that the ALJ failed to include or consider qualifying statements regarding her activities. However, as noted by Defendant, the ALJ did consider and include the qualifying statements regarding her activities, including her alleged difficulties remembering and concentrating, panic attacks while driving, and difficulties with dizziness (Tr. at 23), but still found that Plaintiff's activities were inconsistent with her claim of disabling migraines.

The ALJ also considered the opinion evidence of the State Agency physicians, who opined that Plaintiff was capable of medium work with environmental limitations. (Tr. at 24.) Plaintiff does not point to any contrary opinion evidence from her physicians that her migraines are disabling or otherwise cause work-related limitations.[6] Although Plaintiff contends that the ALJ should have included limitations in the RFC to account for work breaks or absences related to her migraines, the ALJ gave multiple reasons to conclude that the evidence did not support the severity of symptoms claimed by Plaintiff, as set out above. The ALJ ultimately concluded that Plaintiff's history of migraine headaches was adequately accounted for with the limitation to medium work with additional environmental limitations. Those environmental limitations include limitations on exposure to extreme cold, pulmonary irritants including odors, and workplace hazards such as unprotected heights and dangerous machinery, which is consistent with Plaintiff's testimony that her migraines varied depending on "the weather" and "scents," as well as her concerns of dizziness. (Tr. at 22, 70.)

---

[6] Plaintiff does point to a family leave form covering a brief two-week period from July 26, 2018 to August 6, 2018, immediately after her vehicle accident. (Tr. at 601-02.) However, soon after, her doctor signed a "return to work" form on August 23, 2018, opining that Plaintiff could be released to work at "full, unrestricted duty." (Tr. at 625.)

13

Thus, the ALJ explained the basis for the decision sufficiently to allow the Court to follow the reasoning, and substantial evidence supports that determination. Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").

B. Anxiety and Depression

Plaintiff next contends that the ALJ's erred at step two of the sequential analysis in finding that Plaintiff's anxiety and depression were non-severe impairments. (Pl.'s Br. at 16.) She further contends that the ALJ's failure to account for these impairments at later steps renders the RFC unsupported by substantial evidence. At step two, the ALJ identified four severe impairments: "history of migraine headaches; degenerative disc disease; osteoarthritis; and obesity." (Tr. at 20.) The ALJ further identified six additional physical impairments as non-severe, along with the two mental impairments now in question. (Tr. at 20.) In finding that Plaintiff's depression and anxiety did not cause more than minimal limitations in her ability to perform basic work activities, the ALJ noted that, while Plaintiff presented with "anxious affect and abnormal mood" at times, her examinations revealed "mostly normal findings," and her treatment has been conservative, "including psychotherapy and prescribed alprazolam, Xanax, Lamictal, and Cymbalta," and she had "significant activities of daily living." (Tr. at 24.)

At step two, the ALJ also included a discussion of the four broad functional areas of mental functioning set out in the regulations for evaluating mental impairments, commonly known as "paragraph B" criteria. These functional areas are understanding, remembering and applying instructions; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. In the present case, the ALJ concluded that Plaintiff had mild limitations in each of these areas. The ALJ included the following explanation of her findings regarding Plaintiff's mental functioning:

> [Plaintiff] alleged that she has difficulties remembering and concentrating. However, on mental status examination, [Plaintiff] generally presents with mostly normal findings, including alert, oriented, cooperative, normal judgment, appropriately dressed, well-groomed, good hygiene, good eye contact, intact abstract reasoning, good insight, normal gait, normal behavior, normal mood, and normal affect. Additionally, [Plaintiff] reports that she is able to live with her family, use the internet, use social media, research medical treatment, craft, take care of plants, basket weave, make jewelry, vacuum for short periods, read, and drive a car. [Plaintiff] also reported working after the alleged onset date, as well as attempting to work as an English as a second language instructor. She noted that she helps take care of her son who has been diagnosed with schizophrenia. In addition, [Plaintiff] took her continuing education courses for her RN license in early 2019, and then renewed her RN license in November of 2019.

(Tr. at 21) (citing Tr. at 438, 470, 507, 515, 518, 593, 660, 667, 736, 748, 763, 2373, 2435, 2436, 2444, 2454, 2456, 2462). The ALJ, citing 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1), concluded that "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities, they are nonsevere." (Tr. at 21.)

In making these findings, the ALJ further noted that "[t]he limitations identified in the "paragraph B" criteria are not [an RFC] assessment," and that the mental RFC "assessment

15

used at steps 4 and 5 of the sequential analysis requires a more detailed assessment." (Tr. at 21.) The ALJ then further discussed Plaintiff's mental impairments in setting the RFC, and set out her reasons for discounting Plaintiff's statements concerning the limiting effects of her symptoms. (See Tr. at 23.)

Plaintiff contends that the ALJ erred by finding Plaintiff's mental impairments non-severe and by failing to include them in the RFC. Plaintiff notes that the ALJ relied on Plaintiff's activities but failed to consider Plaintiff's testimony qualifying her abilities to engage in those activities. Plaintiff also contends that it was error for the ALJ to rely on the normal examination findings, without considering the contrary findings including in particular the assessments and neuropsychological testing by Dr. Harris. Finally, the ALJ points to the opinions of the State Agency psychological consultants, who found moderate limitations in some areas and limited Plaintiff to "simple work." Plaintiff argues that including these limitations would have precluded her return to past work and/or transferability of skills resulting in a finding of disability.

However, the ALJ provided multiple reasons and extensive explanation for reaching her conclusions. First, the ALJ noted significant credibility issues regarding Plaintiff's claims, based on the inconsistencies in the record and the assessments of both Dr. Harris and Dr. Conrad. On this point, the ALJ noted that Plaintiff's "neuropshychological exam indicated that it was suggested that she was exaggerating her symptoms and that her self-reported mood disorder should be interpreted with caution." (Tr. at 23, 729-34.) Specifically, as noted above, Dr. Harris included a symptom validity test as part of the neuropsychological testing, and Plaintiff's "performance across a stand-along symptom validity measure was well below

16

expectation and suggestive of possible symptoms exaggeration." (Tr. at 731.) Plaintiff's depression and anxiety findings were based on "self-reported mood measures" to be "interpreted with caution." (Tr. at 731.) The ALJ also relied on Dr. Conrad's assessment that Plaintiff was seeing doctors because she "seems to want to be on disability." (Tr. at 23, 2451.) In addition, the ALJ noted specific instances that reflected a lack of credibility, such as Plaintiff reporting "spending an entire month in bed," when the remainder of the evidence in the record showed otherwise, including medical appointments scheduled during that time. (Tr. at 21.)

Second, the ALJ relied on the examination records reflected "mostly normal" mental status examinations including "alert, oriented, cooperative, normal judgment, appropriately dressed, well-groomed, good hygiene, good eye contact, intact abstract reasoning, good insight, normal gait, normal behavior, normal mood, and normal affect." (Tr. at 21.) Plaintiff points to other records showing depression and anxiety and related symptoms, particularly the assessments and related limitations from Dr. Harris. However, as noted above, the ALJ specifically addressed Dr. Harris' assessment and relied on Dr. Harris' warning that Plaintiff's "self-reported mood disorder" which included the anxiety and depression assessment, should be considered with caution and reflected symptom exaggeration.

Third, the ALJ relied on Plaintiff's activities, including living with her family, using the internet, using social media, researching medical treatment, crafting, taking care of plants, basket weaving, making jewelry, vacuuming for shore periods, reading, and driving a car. (Tr. at 21; see also Tr. at 2443.) The ALJ also referenced Plaintiff's continued work activity after the alleged onset date and her ability to care for her son who has been diagnosed with

schizophrenia, as well as her decision to take continuing education courses and renew her RN license in September 2019. (Tr. at 21.) The ALJ reasonably relied on the evidence in the record reflecting that Plaintiff maintained the mental abilities required for these activities. The ALJ also noted Plaintiff's qualifying testimony that she had panic attacks when driving and difficulty remember and concentrating due to a traumatic brain injury (Tr. at 23), but the ALJ also noted that there was "no objective medical abnormality related to a traumatic brain injury," with a "negative head CT" and "normal neurological examination findings." (Tr. at 21-22.) Thus, the ALJ considered Plaintiff's testimony regarding those activities, and addressed those contentions in the context of the evidence in the record.

Finally, the ALJ considered the evidence again in making a determination that the State agency psychological consultants' opined mental limitations were unpersuasive (Tr. at 24). The State agency psychologists found Plaintiff had some moderate limitations in the "paragraph B" functional areas and opined that, as a result, she was "limited to understanding and remembering short and simple instructions, sustaining sufficient attention to complete simple routine tasks with normal breaks, working in a setting with minimal social demands, and managing a stable work assignment in a setting with minimal changes in routine." (Tr. at 24.) The ALJ found that these opinions were not persuasive because they were "inconsistent with, and unsupported by, [Plaintiff's] mostly normal progress reports, activities of daily living, treatment history, and examination findings." (Tr. at 24-25.) Those findings are further explained throughout the decision, as discussed at length above, and notably the ALJ relied

18

on the reports from Plaintiff's physicians Dr. Harris and Dr. Conrad as part of that determination and explanation.[7]

Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, and clearly explained the reasons for her determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #11] be

---

[7] To the extent Plaintiff contends that a finding limiting her to simple work would render her disabled because she could not return to her past work or have transferrable skills, Defendant has noted that such a finding would not have rendered her disabled under the Grids, and has further noted that the ALJ made an alternative finding that Plaintiff would be able to perform the requirements of unskilled work such as Store Laborer, Hand Packager, and Dining Room Attendant. (Tr. at 26-27.) The Court need not consider that issue further, given that there is substantial evidence supporting the ALJ's determination as discussed above.

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be

GRANTED, and that this action be DISMISSED with prejudice.

     This, the 1st day of September, 2022.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
